IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Medical Quant USA, Inc., | ) | CASE NO.:  1:21 cv 877 |
| | ) | |
| Plaintiff(s) | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S MOTION FOR DEFAULT** |
| Radiant Life Technologies Ltd., | ) | **JUDGMENT AGAINST DEFENDANT** |
| | ) | **RADIANT LIFE TECHNOLOGIES LTD** |
| Defendant(s) | ) | |
| | ) | |

Pursuant to Fed. R. Civ P 55(b)(2) Plaintiff, Medical Quant USA, Inc. dba Multi-Radiance ("Multi-Radiance"), seeks a default judgment against Defendant, Radiant Life Technologies, LTD. ("RL"). Service of the Summons and Complaint was perfected on an agent of RL on May 28, 2021. However, RL failed to file an Answer or otherwise plead. RL's failure to file an Answer or otherwise plead resulted in the Clerk's entry of default on July 1, 2021. *See* ECF No. 11. Accordingly, Multi-Radiance now respectively requests this Court to enter a Judgement of Default against RL in connection with RL's past and continued infringement of Multi-Radiance's Trademark.

A *Memorandum in Support* of this motion is attached and incorporated by reference.

Respectfully submitted,

*/s/ Stephen H. Jett*
Stephen H. Jett (0046821)
Matthew D. Smith (0099806)
Buckingham, Doolittle & Burroughs, LLC
1375 East Ninth Street, Suite 1700
Cleveland, Ohio  44114
Phone:  216-736-4241
Email:  sjett@bdblaw.com
msmith@bdblaw.com

I

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

STATEMENT OF THE ISSUES TO BE DECIDED ................................................... v

SUMMARY OF ARGUMENT ........................................................................................ vi

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT ................. 1

I. FACTUAL AND PROCEDURAL BACKGROUND ............................................... 1

   A. Factual Background ..................................................................................... 1

   B. Procedural History Related to RL's Default ........................................... 3

II. LAW AND ANALYSIS ........................................................................................... 4

   A. RL is currently in default and should be held liable for all claims alleged against it. .............. 4

   B. RL has violated the Lanham Act under 15 U.S.C § 1114 and 15 U.S.C § 1125. ...................... 5

      1. Trademark Infringement ........................................................................ 5

      2. False Designation of Origin .................................................................... 7

      3. RL has engaged in willful infringement of Multi-Radiance's trademark ................................. 8

   C. RL has violated Ohio's Unfair Competition and Deceptive Trade Practices law. .................... 8

III. MULTI-RADIANCE IS ENTITLED TO STATUTORY DAMAGES, A PERMANENT INJUNCTION, AND REASONABLE ATTORNEYS' FEES AS A RESULT OF RL'S WILLFUL AND CONTINUOUS INFRINGEMENT OF MULTI-RADIANCE'S MARK .. 10

A. Multi-Radiance is entitled to statutory damages under the Lanham Act as a result of RL's willful infringement of Multi-Radiance's Mark. ..................................................... 10

B. Multi-Radiance is entitled to injunctive relief as a result of RL's continued infringement of Multi-Radiance's Mark. ..................................................................................... 12

      1. Irreparable Harm ................................................................................... 12

      2. No adequate remedy at law .................................................................. 13

      3. Balancing the Hardships weighs in favor of granting a permanent injunction. ...................... 14

      4. It is in the public's best interest to issue the injunction to prevent consumer confusion ........ 14

   C. Multi-Radiance is entitled to reasonable attorney fees given the fact this is an "exceptional case" ......................................................................................................... 15

III. CONCLUSION ..................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 280 F.3d 619 (6th Cir.2002) ..... 9

Arista Records, Inc. v. Beker Enterprises, Inc., 298 F.Supp.2d 1310 (S.D.Fla.2003)................... 8

Audi AG v. D'Amato, 469 F.3d 534 (6th Cir. 2006) .................................................... 7, 12, 13, 14

Barrios v. Am. Thermal Instruments, Inc., 712 F. Supp. 611 (S.D. Ohio 1988) ........................... 9

Berk v. Moore, No. 2:10-CV-1082, 2012 WL 3780303, (S.D. Ohio Aug. 31, 2012) ................... 4

Chanel, Inc. v. Jermaine Wrice, No. 5:13-CV-891, 2015 WL 521144,

    (N.D. Ohio Feb. 9, 2015) ................................................................................................. 4, 6

Cir. City Stores, Inc. v. CarMax, Inc., 165 F.3d 1047 (6th Cir. 1999) ........................................ 13

Coach, Inc. v. Cellular Planet, No. CIVA 2:09-CV-00241, 2010 WL 1853424, (S.D. Ohio May

    7, 2010) ............................................................................................................... 10, 11, 12

eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006)............................................................. 12

ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915 (6th Cir. 2003)........................................................ 9

Ford Motor Co. v. Cross, 441 F. Supp. 2d 837 (E.D. Mich. 2006) ............................................ 10

Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C., 542 F. Supp. 2d 769 (N.D.

    Ohio 2008) ............................................................................................................. 16

Int'l Korwin Corp. v. Kowalczyk, 855 F.2d 375 (7th Cir.1988).................................................... 8

J & J Sports Prods., Inc. v. Rodriguez, No. 1:08-CV-1350, 2008 WL 5083149, (N.D. Ohio Nov.

    25, 2008) ............................................................................................................. 4

Leach v. Lifeway for Youth, Inc., No. 1:07-CV-00200, 2008 WL 1990390, (S.D. Ohio May 1,

    2008) ............................................................................................................. 4

Leventhal & Assoc., Inc. v. Thomson Cent. Ohio, 128 Ohio App. 3d 188, 714 N.E.2d 418 (10th

    Dist. 1983)................................................................................................ 9

Lorillard Tobacco Co. v. Ahmad's Pizza, Inc., 866 F. Supp. 2d 872 (N.D. Ohio 2012) ............. 15

Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc., 453 F.3d 377 (6th Cir. 2006) ................ 15

Louis Vuitton Malletier & Oakley v. Veit, 211 F.Supp.2d 567 (E.D.Pa.2002)............................. 8

Luxottica Grp. S.p.A. v. Casa Los Martinez Corp., No. 1:14-CV-22859-JAL, 2014 WL 4948632,

    (S.D. Fla. Oct. 2, 2014) ................................................................................... 12

Microsoft Corp. v. McGee, 490 F. Supp. 2d 874 (S.D. Ohio 2007)................. 8, 10, 11, 12, 14, 16

Philip Morris USA, Inc. v. Castworld Prod., Inc., 219 F.R.D. 494 (C.D. Cal. 2003) ................. 16

iii

The Ohio State Univ. v. Skreened Ltd., 16 F.Supp.3d 905 (S.D.Ohio 2014)................................. 6

Two Pesos v. Taco Cabana, 505 U.S. 76, (1992) ......................................................... 7

Vuitton Et Fils, S. A. v. Crown Handbags, 492 F. Supp. 1071 (S.D.N.Y. 1979)........................ 15

Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595 (6th Cir. 1991) ......................................... 13

## Statutes

15 U.S.C. § 1114............................................................................................................. vi, 5, 6

15 U.S.C. § 1114(1)(a)-(b) ............................................................................................................ 5

15 U.S.C. § 1116(a) ..................................................................................................................... 12

15 U.S.C. § 1116(d)(1)(B) ........................................................................................................... 10

15 U.S.C. § 1117(a) ..................................................................................................................... 15

15 U.S.C. § 1117(c)(1) ................................................................................................................. 10

15 U.S.C. § 1117(c)(2)............................................................................................................ 10, 12

15 U.S.C. § 1125 ...................................................................................................................... vi, 5, 8

15 U.S.C. § 1125(a) ....................................................................................................................... 7

15 U.S.C. § 1125(c)(2)………………………………………………………………………….. 12

Ohio Rev. Code § 4165.02....................................................................................................... 8, 9

Ohio Rev. Code § 4165.03............................................................................................................ 9

Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 401.............................. 4, 5

## Rules

Fed. R. Civ. P 4(h) .......................................................................................................................... 3

Fed. R. Civ. P 55 .............................................................................................................................. 4

Fed. R. Civ. P 55(a) ...................................................................................................................... 4, 5

Fed. R. Civ. P 55(b) .......................................................................................................................... 4

Fed. R. Civ. P 55(b)(2)....................................................................................................................... 4

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

**ISSUE ONE:** Whether Plaintiff, Medical Quant USA, Inc. dba Multi-Radiance ("Multi-Radiance") has sufficiently pled a claim for relief under 15 U.S.C. § 1114 for Trademark Infringement and under 15 U.S.C. § 1125 for False Designation of Origin.

**ISSUE TWO:** Whether Multi-Radiance is entitled to a permanent injunction due to Defendant, Radiant Life Technologies, LTD's, alleged Trademark Infringement and False Designation of Origin.

**ISSUE THREE:** Whether Multi-Radiance is entitled to statutory damages and reasonable attorney's fees, available under the Lanham Act, as a result of Radiant Life Technologies, LTD's alleged Trademark Infringement and False Designation of Origin.

## SUMMARY OF ARGUMENT

**ISSUE ONE**: Multi-Radiance has sufficiently pled a cause of action for Trademark Infringement and False Designation of Origin under the Lanham Act. RL is currently in default of answer due to the fact RL has failed to appear, plead, or otherwise defend. Notwithstanding RL's default, Multi-Radiance owns a federally registered trademark for "Multi Radiance." However, RL has continued to use "Multi Radiance" as part of a product RL sells called "CoMra." The "Mra" in "CoMra" stands for "Multi Radiance." Despite Multi-Radiance placing RL on notice of its infringement and the United States Patent and Trademark Office Denying RL of a trademark for "CoMra," RL continues to sell, market, and distribute its infringing products. Moreover, because RL's product uses Multi-Radiance's entire Mark in its product name, RL's product is likely to cause confusion with consumers.

**ISSUE TWO:** Multi-Radiance should be granted an injunction for RL's continuous and willful infringement of Multi-Radiance's Mark. RL's use of Multi-Radiance's Mark is likely to cause consumer confusion because the product RL sells carries the identical name as Multi-Radiance's Mark. In addition, RL will suffer no harm from an injunction besides having to comply with the trademark laws of the United States. Granting an injunction is also within the public's interest because an injunction will eliminate any consumer confusion regarding the origin and quality of the goods offered by RL.

**ISSUE THREE:** The Lanham Act allows a party to recover statutory damages in lieu of actual damages because in a default judgment action, actual damages are within the infringing party's control and have not been disclosed. Further, even though RL's infringement is "willful" Multi-Radiance seeks the maximum damages for non-willful infringement. Multi-Radiance's request for the maximum statutory damages for non-willful infringement, is in line with previous federal court

decisions in the 6th Circuit and throughout the country. Lastly, due to the exceptional nature of RL's continuous and willful infringement, an award of reasonable attorney's fees is appropriate.

## MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

### I.    FACTUAL AND PROCEDURAL BACKGROUND

#### A. Factual Background

Multi-Radiance is in the business of selling Pulsed Laser Technology that helps athletes recover after a game or workout. ECF No. 1 at ¶ 2. Multi-Radiance also creates products in the veterinary, chiropractic, general medicine, and physical therapy fields.[1] Each of Multi-Radiance's products bear the "Multi-Radiance" insignia. ECF No. 1 at ¶ 3.

On November 23, 2010, Multi-Radiance obtained a federally registered trademark from the United States Patent and Trademark Office ("USPTO") for "Multi-Radiance", Registration No 3880197 (sometimes hereafter, the "Mark"). *Id*. at ¶ 4. A true and correct copy of the trademark registration is attached hereto as <u>Exhibit 1</u> and incorporated herein by reference. Multi-Radiance has continuously used its trademark, "Multi-Radiance", in interstate commerce from 2007 to the present. *Id*. at ¶ 3.

RL is a direct competitor of Multi-Radiance. *Id*. at ¶ 5. Upon information and belief, RL is headquartered in the Country of Cyprus and sells products in numerous countries throughout the world, including the United States. *Id*. at ¶ 12. RL sells a substantially similar products to Multi-Radiance known as "CoMra." *Id*. at ¶ 13. However, a serious issue exists because the "Mra" in "CoMra" stands for "Multi-Radiance." *Id*. at ¶ 14. In fact, RL's website expressly indicates "coMra stands for 'coherent Multi-radiance' – that is, the radiances that we employ in our unique healing devices."[2] *Id*. Indeed, RL apparently recognized the need for a federally registered trademark in

---

[1] MULTI-RADIANCE MEDICAL, https://www.multiradiance.com/ (last visited July 30, 2021).
[2] COMRA https://comra-therapy.com/#Start (last visited July 30, 2021).

the United States because on July 8, 2016, RL filed an application with the USPTO seeking a trademark for "Comra Coherent Multi-radiances." ECF No. 1 at ¶ 19.

Multi-Radiance discovered RL's infringement in early 2017. On February 22, 2017, Multi-Radiance sent written notice to RL indicating RL was infringing upon Multi-Radiance's registered trademark. *See* Exhibit 2. Multi-Radiance requested that RL cease and desist from using Multi-Radiance's Mark on their products and asked RL to remove all references to "Multi-Radiance" from their website. *Id*. In addition, Multi-Radiance requested that RL abandon their trademark application due to the fact Multi-Radiance already had a federally registered trademark for "Multi-Radiance." *Id*.

However, RL ignored Multi-Radiance's cease and desist request. Consequently, on December 12, 2017 Multi-Radiance filed a Notice of Opposition with the USPTO to RL's trademark application. ECF No. 1 at ¶ 20. On February 24, 2020, the USPTO denied RL's Application. A copy of the USPTO's order is attached hereto as Exhibit 3 and incorporated herein by reference. The USPTO denied RL's application, in part, because RL expressly refused to obtain U.S counsel and timely respond to filings. *See* Exhibit 3.

Multi-Radiance provided RL ample opportunity to voluntarily remove all references to "Multi-Radiance" from their goods, marketing materials, and website. *Id*. at ¶ 27.  However, it became readily apparent that RL intended to ignore the USPTO decision and Multi-Radiance's requests. *Id*. at ¶ 28. Thus, in order to protect the substantial investment Multi-Radiance has made in advertising and promoting its goods using the "Multi-Radiance" mark and to protect its legally recognized property interest in the "Multi-Radiance" trademark, Multi-Radiance eventually sought relief from the Court. *Id*. at ¶¶ 22, 28.

### B.  Procedural History Related to RL's Default

To protect Multi-Radiance's property interest in its federally registered trademark, on April 27, 2021, Multi-Radiance filed a Complaint with this Court. ECF. No 1. At the time Multi-Radiance filed the Complaint, RL listed Leslie Carmen, who was located in Boca Raton, Florida, as an "Agent and Representative" in North America, United States.  A copy of RL's website at the time is attached as Exhibit 4. As such, pursuant to Fed. R. Civ. P 4(h), a copy of the Summons and Complaint, was served on RL, via their general agent, on May 28, 2021. *See* ECF No. 8.

To date, RL has failed to appear, plead, or otherwise defend within the time period allowed by the Federal Rules of Civil Procedure. Moreover, it appears RL has hired counsel in the Ukraine to represent RL in this case; however, no U.S counsel has made an appearance on behalf of RL. In fact, RL's Ukrainian counsel sent a correspondence to Multi-Radiance's counsel, as well as the Court, and expressly admitted she was not licensed to practice in the United States.  A copy RL's counsel's letter is attached hereto as Exhibit 5.

Multi-Radiance filed an Application for Default with the Clerk of Courts on June 30, 2021. *See* ECF. No.10. Subsequently, the Clerk of Courts entered a default against RL on July 1, 2021. *See* ECF No. 11. In accordance with the Federal Rules of Civil Procedure, Multi-Radiance sent a copy of the Application of Default to RL's agent, Ms. Carmen.

Interestingly, Multi-Radiance discovered, after serving Ms. Carmen with the Application for Default, that at some point after Multi-Radiance served RL with the Summons and Complaint, RL removed Ms. Carmen's name and contact information from its website. RL's suspicious removal of Ms. Carmen's name from its website — after the filing of this case and the issuance of service —suggests that RL did in fact receive a copy of the Summons and Complaint, but has chosen to ignore it.

3

## II.    <u>LAW AND ANALYSIS</u>

### A. RL is currently in default and should be held liable for all claims alleged against it.

Under Federal Rule of Civil Procedure 55, the entry of a default judgment is a two-step process. *Berk v. Moore,* No. 2:10-CV-1082, 2012 WL 3780303, at *2 (S.D. Ohio Aug. 31, 2012). First, the clerk must enter a party's default upon a showing, by affidavit or otherwise, that the party has failed to plead or otherwise defend. Fed. R. Civ. P 55(a). Second, upon the entry of default, the party seeking default judgment "must apply to the court for a default judgment." Fed. R. Civ. P 55(b)(2). A court may enter default judgment against the defendants with or without a hearing. Fed. R. Civ. P 55(b); *Chanel, Inc. v. Jermaine Wrice*, No. 5:13-CV-891, 2015 WL 521144, at *3 (N.D. Ohio Feb. 9, 2015).

Well-pleaded factual allegations of the complaint are accepted as true for the purposes of liability. *J & J Sports Prods., Inc. v. Rodriguez,* No. 1:08-CV-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008). However, "the Court must still determine whether those facts are sufficient to state a claim for relief as to the causes of action for which the plaintiffs seek default judgment." *Chanel, Inc* at *3. An entry of default judgment requires an affirmation that the person against whom the default judgment is obtained is not: "(1) "an infant or incompetent person" who is unrepresented; (2) a member of the armed services who is entitled to protection against default pursuant to the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix § 401 *et seq.;* or (3) an officer or agency of the United States*." Leach v. Lifeway for Youth, Inc*., No. 1:07-CV-00200, 2008 WL 1990390, at *1 (S.D. Ohio May 1, 2008).

Multi-Radiance can easily establish the federal requirements for a default judgment. The Complaint was filed on April 27, 2021. ECF No.1. RL was served with a copy of Summons and Complaint, via their general agent, on May 28, 2021. *See* ECF No. 8. RL has failed to appear,

plead, or otherwise defend within the time period allowed by the Federal Rules of Civil Procedure and, therefore, is in default. Moreover, RL is not an infant or incompetent person. *See* Jett Decl. at ¶ 5, which is attached as <u>Exhibit 6</u>. Further, RL is not a member of the armed services who is entitled to protection under the Soldiers and Sailors Civil Relief Act nor is RL an officer or agency of the United States. *Id.* at ¶ 6.

In compliance with Fed. R. Civ. P 55(a), Multi-Radiance filed an Application for Default with the Clerk of Courts on June 30, 2021. ECF. No.10. Subsequently, the Clerk of Court entered default against RL on July 1, 2021. ECF No. 11. Accordingly, at this juncture, a default judgment against RL for their continued failure to appear, plead, or otherwise defend, is appropriate.

### B.  RL has violated the Lanham Act under 15 U.S.C § 1114 and 15 U.S.C § 1125.

#### 1.    *Trademark Infringement*

Under 15 U.S.C § 1114:

**(1)** Any person who shall, without the consent of the registrant—

**(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

**(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C § 1114(1)(a)-(b).

To establish trademark infringement under §1114, the moving party must show that: (1) it owns a valid trademark; (2) defendant used the trademark "in commerce" without plaintiff's authorization; (3) defendant used plaintiff's mark, or an imitation thereof, "in connection with the sale, offering for sale, distribution, or advertising" of goods and services; and (4) defendant's use of the respective marks is likely to cause consumer confusion. *The Ohio State Univ. v. Skreened Ltd.,* 16 F.Supp.3d 905, 910 (S.D.Ohio 2014) (citing 15 U.S.C. § 1114). Federal Courts have deemed the fourth element —whether the defendants use of the respective mark is likely to cause confusion — as the "touchstone of liability for federal trademark infringement claims brought under 15 U.S.C § 1114." *Id.* The Northern District of Ohio has previously indicated that a defendant, by the nature of its default, admits that its use of the plaintiff's "Respective Marks is likely to cause confusion among consumers regarding the origin and quality of the goods offered by defendants." *Chanel, Inc.,* at *4.

Accepting the well-pled allegations in the Complaint as true, Multi-Radiance has established a claim for relief for trademark infringement under 15 U.S.C § 1114. There is no dispute Multi-Radiance owns a valid trademark for "Multi-Radiance." ECF. No.1 at ¶ 4; *See also* Exhibit 1. Moreover, RL has continued to market, produce, advertise, distribute, and sell products in commerce that bear the "Multi-Radiance" name, despite the fact RL was expressly denied a trademark for the name. ECF No. 1 at ¶¶ 6-8. RL has been placed on notice that its products are infringing on Multi-Radiance's Trademark; yet, RL continues to use the Trademark in commerce without Multi-Radiance's consent. ECF. No.1 at ¶ 18. By defaulting in this case, RL has admitted that its use of Multi-Radiance's Mark is likely to cause confusion among consumers regarding the origin and quality of the goods offered by RL. Notwithstanding RL's default, RL's use of Multi-Radiance's mark *factually* causes consumer confusion because the product RL sells carries the

identical name as Multi-Radiance's mark. ECF No. 1 at ¶30. Therefore, RL has violated §1114 of the Lanham Act.

### 2. *False Designation of Origin*

Under 15 U.S.C. § 1125(a):

**(a)** Civil action

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C §1125(a). Under the Lanham Act, the same test is used for trademark infringement and false designation of origin: "the likelihood of confusion between the two marks." *Audi AG v. D'Amato,* 469 F.3d 534, 542 (6th Cir.2006) (citing *Two Pesos v. Taco Cabana,* 505 U.S. 763, 780 (1992)).

Here, based on the undisputed allegations in Multi-Radiance's Complaint, RL is liable for false designation of origin under 15 U.S.C § 1125. RL continues to produce, market, and sell products with Multi-Radiance's exact Mark in interstate commerce without Multi-Radiance's consent or authorization. ECF No. 1 at ¶ 6. In fact, RL has produced, advertised, distributed, and sold products with Multi-Radiance's identical mark, after Multi-Radiance placed RL on notice of RL's infringement. ECF No. 1 at ¶ 18. Further, RL's products are likely to be mistaken for the product offered by Multi-Radiance, given the fact RL is a direct competitor using Multi-

Radiance's exact Mark on a product substantially similar to one that Multi-Radiance sells. ECF No. 1 at ¶ 6. Thus, RL has violated §1125 of the Lanham Act.

### 3. *RL has engaged in willful infringement of Multi-Radiance's trademark*

Under the Lanham Act, "infringement is willful, and thus triggers the enhanced statutory damages limit, if the defendant "had knowledge that its actions constitute an infringement." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007). A party's continued infringement, after receiving notice of its infringement, is probative evidence of willfulness. *Id*. (citing *Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380–81 (7th Cir.1988) (willfulness may be demonstrated where infringer is provided notice of its infringing conduct)). Moreover, District Courts throughout the country have held a Court may infer willfulness from a party's default. *Id*.[3]

Multi-Radiance sent notice, in writing, to RL which placed RL on notice of RL's infringement. ECF No. 1 ¶ 18. In fact, RL attempted to obtain its own trademark for "Comra Coherent Multi-radiances" but the USPTO denied RL's application. Nevertheless, RL continued to produce, market, and sell products with Multi-Radiance's exact Mark in interstate commerce, even though RL was fully aware their conduct was improper. ECF No. 1 ¶¶ 19-21. Therefore, RL's blatant and continuous infringement of Multi-Radiance's Mark constitutes "willfulness."

### C. RL has violated Ohio's Unfair Competition and Deceptive Trade Practices law.

Under Ohio's Deceptive Trade Practices Act, R.C 4165.02:

> (A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
>
> > (1) Passes off goods or services as those of another;

---

[3] *See also Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310, 1313 (S.D.Fla.2003) (The Court held the Defendant's infringement constituted willfulness given the fact the "Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiff's communications"); *Louis Vuitton Malletier & Oakley v. Veit*, 211 F.Supp.2d 567, 583 (E.D.Pa.2002) ( holding that "[w]illfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice.")

(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; or

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services.

R.C § 4165.02. Further, under R.C 4165.03, injunctive relief and reasonable attorney's fees are available remedies for a defendant's willful infringement of a plaintiff's trademark. R.C 4165.03.

Both Ohio and federal courts "have recognized that the same analysis applies to claims under Ohio's statutory unfair competition law and the Lanham Act.[4] *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 626 n. 2 (6th Cir.2002). Thus, because trademark claims under Ohio law follow the same analysis as those under the Lanham Act, the Court's disposition of the federal trademark claims will therefore also dispose of the state trademark claims as well. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003).

RL's conduct constitutes a deceptive trade practice and unfair competition under Ohio Law. Specifically, RL's "coMra" product incorporates Multi-Radiance's entire Trademark, which causes confusion and the potential to deceive consumers regarding the source, origin, or authenticity of the product. ECF No. 1 at ¶ 24. Moreover, RL has continued to market, produce, advertise, distribute, and sell their products, bearing the "Multi-Radiance" name, despite the fact RL was expressly denied a trademark for the name. ECF No. 1 at ¶¶ 6-8. Multi-Radiance has placed RL on notice, in writing, of RL's infringement; however, RL continues to use the trademark

---

[4] *Leventhal & Assoc., Inc. v. Thomson Cent. Ohio*, 128 Ohio App. 3d 188, 196, 714 N.E.2d 418 (10th Dist. 1983)("When adjudicating claims arising under the Ohio Deceptive Trade Practices Act, Ohio courts shall apply the same analysis applicable to claims commenced under analogous federal law"); *Barrios v. Am. Thermal Instruments, Inc.*, 712 F. Supp. 611, 613 (S.D. Ohio 1988) ("Because both the Ohio Deceptive Trade Practices statutes and the Lanham Act focus upon confusion as to origin "the analyses to be applied by the courts in regard to these bases of relief are essentially the same.")

in commerce without Multi-Radiance's consent. *Id*. Therefore, RL's conduct constitutes a deceptive trade practice under Ohio Law.

### III.    MULTI-RADIANCE IS ENTITLED TO STATUTORY DAMAGES, A PERMANENT INJUNCTION, AND REASONABLE ATTORNEYS' FEES AS A RESULT OF RL'S WILLFUL AND CONTINUOUS INFRINGEMENT OF MULTI-RADIANCE'S MARK

#### A.    Multi-Radiance is entitled to statutory damages under the Lanham Act as a result of RL's willful infringement of Multi-Radiance's Mark.

The Lanham Act "authorizes statutory damages in lieu of actual damages." *Coach, Inc. v. Cellular Planet*, No. CIVA 2:09-CV-00241, 2010 WL 1853424, at *5 (S.D. Ohio May 7, 2010). Under the Lanham Act, a court may award a minimum of $1,000.00, and a maximum of $200,000.00 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just. . . ." 15 U.S.C. § 1117(c)(1). However, if the use of the counterfeit mark was "willful," the maximum limit of statutory damages is raised to $2,000,000.00. 15 U.S.C. § 1117(c)(2). A "counterfeit mark," for purposes of awarding statutory damages, is defined as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered...." 15 U.S.C. § 1116(d)(1)(B).

As analyzed above, "willfulness" is met if the Defendant "had knowledge that its actions constitute an infringement." *McGee*, 490 F. Supp. 2d at 880. "Actual knowledge is not required, and constructive knowledge will suffice to trigger the enhancement." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006). In fact, Courts are permitted to infer willfulness if the Defendant continues to infringe upon the Plaintiff's Mark. *McGee*, 490 F. Supp. At 880.

10

An award of statutory damages are appropriate in default judgment cases *because the information needed to prove actual damages is within the infringers' control and is not disclosed*." *Id*. at 882 (emphasis added). Indeed, the "amount of statutory damages awarded to a plaintiff within the range provided does not depend on actual damages." *Coach, Inc*., 2010 WL 1853424, at *5. Thus, provided the Court finds the amount of statutory damages being sought is reasonable, Courts will award statutory damages to a Plaintiff in lieu of actual damages. *McGee*, 490 F. Supp. At 882.

Here, the actual damages Multi-Radiance has suffered is uncertain at this time due to the lack of discovery from RL. Because RL has defaulted, Multi-Radiance will not have the opportunity to discover the breadth of RL's willful infringement and the amount of actual damages it suffered. Rather than speculate as to the amount of actual damages Multi-Radiance has suffered, Multi-Radiance seeks statutory damages available under the Lanham Act.

As discussed in the section above, RL's infringement of Multi-Radiance's Mark constitutes "willfulness." For instance, Multi-Radiance sent notice, in writing, to RL that placed RL on notice of RL's infringement. ECF No. 1 ¶ 18; *see also* Exhibit 2. Nevertheless, RL attempted to obtain its own trademark for "Comra Coherent Multi-radiances" but the United States Patent and Trademark Office denied RL's application. Despite the USTPO's explicit denial of RL's trademark request and Multi-Radiance's cease and desist letter, RL nevertheless continued to produce, market, and sell products in interstate commerce using Multi-Radiance's exact Mark. ECF No. 1 ¶¶ 19-21. Thus, RL's blatant and continuous infringement of Multi-Radiance's Mark constitutes "willfulness."

Although RL's infringement constitutes "willfulness," Multi-Radiance nevertheless seeks only the maximum amount of statutory damages for *non-willful* infringement. Specifically, Multi-Radiance seeks statutory damages of $200,000 for RL's infringement upon Multi-Radiance's

11

Mark. RL currently has four products on the market which use Multi-Radiance's trademark. Those products include "coMra therapy," "coMra Delta," "coMra Palm," and "coMra Wave."[5] Multi-Radiance's request for statutory damages for the maximum available for non-willful infringement, is in line with previous cases in the 6th Circuit and throughout the country.[6] Therefore, Multi-Radiance respectfully requests statutory damages in the amount of $200,000 for the Mark RL currently is infringing upon.

> **B.  Multi-Radiance is entitled to injunctive relief as a result of RL's continued infringement of Multi-Radiance's Mark.**

The Lanham Act allows an aggrieved party to seek injunctive relief for a defendant's infringement of their trademark. 15 U.S.C § 1116(a); 15 U.S.C § 1125(c)(2). However, the moving party must satisfy a four-factor test before a court will grant a permanent injunction. *McGee*, 490 F. Supp. 2d at 882 (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). As such, a party seeking a permanent injunction under the Lanham Act must show: "(1) that it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) it is in the public's interest to issue the injunction." *Id.* (citing *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006)).

> **1.  *Irreparable Harm***

---

[5] *See* COMRA https://comra-therapy.com/#Start (last visited July 30, 2021).
[6] *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 881 (S.D. Ohio 2007) (awarding the maximum statutory damages for non-willful infringement even though the Court found the infringement to be willful); *Coach, Inc. v. Cellular Planet*, No. 2:09-CV-00241, 2010 WL 2572113, at *3 (S.D. Ohio June 22, 2010) (granting default judgment and awarding statutory damages in amount of $100,000 per infringement where defendants willfully sold counterfeit Coach products.); *Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, No. 1:14-CV-22859-JAL, 2014 WL 4948632, at *6 (S.D. Fla. Oct. 2, 2014) (granting default judgment and awarding $200,000 in statutory damages per trademark infringed).

Under the first factor, the 6th Circuit has previously held "that no particular finding of likelihood of entry or irreparable harm in necessary for injunctive relief in trademark infringement or unfair competition cases." *Cir. City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). In fact, "irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). The irreparable injury to a Plaintiff flows "both from the potential difficulty of proof of plaintiff's damages, and also from the impairment of intangible values." *Id.*

RL's use of Multi-Radiance's mark is likely to cause consumer confusion because the product RL sells carries the identical name as Multi-Radiance's mark. ECF No. 1 at ¶30. In fact, all of RL's products expressly use the phrase "Multi-Radiance," for which Multi-Radiance has a federally protected trademark and uses on each of its products. ECF No. 1 at ¶ 16. RL's blatant use of Multi-Radiance's Mark in RL's products name, has and will cause confusion to Multi-Radiance's consumers throughout the United States. ECF No. 1 at ¶ 6. As such, Multi-Radiance has and continues to suffer irreparable harm as a result RL's continued infringement.

### 2.    *No adequate remedy at law*

Under the second factor, the 6th Circuit has previously held there is no adequate remedy at law where there is potential future harm from infringement. *Audi AG*, 469 F.3d at 550. For instance, in the *Audi AG* case, the 6th Circuit noted that as long as the website with the infringing content stayed online, "there was potential for future harm, and therefore, there was no adequate remedy at law." *Id.*

Here, the 6th Circuit's analysis in the *Audi AG* case is directly on point to the facts of the current dispute. As long as RL's website sells products with Multi-Radiance's federally registered trademark, Multi-Radiance will suffer potential future harm. RL's deliberate infringement runs the

13

risk of damaging Multi-Radiance's business, profits, reputation, and goodwill in the future, if RL's website is allowed to stay online. ECF No. 1 at ¶ 32. Therefore, Multi-Radiance does not have an adequate remedy at law and is entitled to a permanent injunction.

### 3.      Balancing the Hardships weighs in favor of granting a permanent injunction.

Under the third factor, Courts have previously held that, in balancing the equities, there was no harm to a defendant who was infringing the plaintiff's trademark because an injunction would simply force the defendant to comply with the Lanham Act. *McGee*, 490 F. Supp. 2d at 883. Conversely, the Court noted the plaintiff would suffer hardship if the injunction was not issued because the plaintiff would continue to potentially lose profits. *Id*.

Here, a permanent injunction in warranted because RL will suffer no harm from an injunction other than having to comply with the Lanham Act. Conversely, Multi-Radiance will continue to suffer harm from potential lost sales, damages to reputation, and good will. ECF No. 1 at ¶ 32.

### 4.      It is in the public's best interest to issue the injunction to prevent consumer confusion

With regard to the fourth factor, the 6th Circuit, within the context of a Lanham Act case, approved an injunction because it was in the public's interest to prevent consumers from being misled. *Audi AG*, 469 F.3d at 550. In addition, enjoining an infringing defendant's use of a plaintiff's trademark advance two fundamental purposes of trademark law: "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006).

14

A permanent injunction is necessary to prevent American consumers from being misled by RL's products. Further, granting Multi-Radiance a permanent injunction undoubtedly protects Multi-Radiance's property rights in its federally registered trademark. Thus, it is certainly within the public's interest to issue a permanent injunction. Therefore, Multi-Radiance respectfully moves this Court to issue a permanent injunction against RL and enjoin RL from further infringing upon Multi-Radiance's federally registered trademark.

**C.    Multi-Radiance is entitled to reasonable attorney fees given the fact this is an "exceptional case"**

The Lanham Act authorizes this Court to award Multi-Radiance its reasonable costs and attorneys' fees. 15 U.S.C. § 1117(a). Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id*. When Congress supplemented the Lanham Act in 1975 to allow the recovery of attorney fees, the Department of Commerce issued a statement accompanying the senate report on the new amendment and explained what may constitute an exceptional case:

> Trademark and unfair competition cases brought under the Trademark Act of 1946 ... present a particularly compelling need for attorney's fees ... Deliberate and flagrant infringement of trademarks should particularly be discouraged in view of the public interest in the integrity of marks as a measure of quality of products. Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights. It would be unconscionable not to provide a complete relief including attorney's fees. . .

*Lorillard Tobacco Co. v. Ahmad's Pizza, Inc.*, 866 F. Supp. 2d 872, 882 (N.D. Ohio 2012) (quoting *Vuitton Et Fils, S. A. v. Crown Handbags*, 492 F. Supp. 1071, 1078 (S.D.N.Y. 1979)). In trademark infringement cases, a case is deemed "exceptional", where the "acts of infringement can be characterized as malicious, fraudulent, deliberate or willful." *Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C.*, 542 F. Supp. 2d 769, 781 (N.D. Ohio 2008).

A case may be "deemed 'exceptional'", and merit an award of attorneys' fees under the Lanham Act, when "[a] Defendant disregards the proceedings and does not appear." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003). Moreover, a party's continued infringement, after receiving notice of its infringement, is probative evidence of "willfulness." *McGee*, 490 F. Supp. 2d at 880.

This case certainly meets the definition of "exceptional." RL's infringement is "willful" given the simple fact RL is currently in default. *See* ECF No. 11. Regardless, even if "willfulness" was not inferred by RL's default, this case still meets the "exceptional" standard. For instance, Multi-Radiance placed RL on notice that RL was currently infringing upon Multi-Radiance's Mark. ECF No. 1 at ¶ 18. In fact, RL attempted to obtain a federally registered trademark of its own for "Comra Coherent Multi-radiances" but its application was denied by the USPTO. ECF No. 1 at ¶ 19. However, even after RL's trademark application was denied, RL continued to infringe upon Multi-Radiance's mark by selling, marketing, and distributing products throughout the country containing Multi-Radiance's mark. ECF No. 1 at ¶ 18.

RL has intentionally ignored the United States' trademark laws despite (1) being placed on notice of its infringing conduct and (2) having its trademark application denied by the USPTO. Indeed, RL has deliberately and maliciously continued to sell products with a verbatim use of the same words that comprise Multi-Radiance's Mark. Therefore, this case constitutes an "exceptional case" thereby entitling Multi-Radiance to its reasonable attorney's fees and costs in the amount of $23,462.00. In support of its request for reasonable attorneys' fees and costs, Multi-Radiance respectfully submits the declaration of counsel outlining the attorney fees and costs incurred by Multi-Radiance in prosecuting this action against RL. *See* Jett Decl. at ¶ 9, attached as <u>Exhibit 6</u>.

III.    **CONCLUSION**

RL's willful and malicious infringement of Multi-Radiance's federally registered trademark has and will continue to damage Multi-Radiance. RL's blatant disregard for the laws and procedures of the United States is evidenced by its reckless disregard of the Complaint Multi-Radiance filed with this Court and its continued willful infringement of Multi-Radiance's Mark. Accordingly, Multi-Radiance respectfully requests this Court grant its Motion for Default Judgment and issue a permeant injunction against RL, which restrains RL from engaging in future infringement of Multi-Radiance's Trademark. Further, Multi-Radiance seeks statutory damages under the Lanham Act in the amount of $200,000 and attorneys' fees and costs in the amount of $23,462. A proposed order is attached for the Court's convenience.

Respectfully submitted,

*/s/ Stephen H. Jett*
Stephen H. Jett (0046821)
Matthew D. Smith (0099806)
Buckingham, Doolittle & Burroughs, LLC
1375 East Ninth Street, Suite 1700
Cleveland, Ohio   44114
Phone:  216-736-4241
Email:  sjett@bdblaw.com
            msmith@bdblaw.com

17

## **CERTIFICATION OF COMPLIANCE**

I, Stephen H. Jett, certify this case has not been assigned to a track pursuant to Local Rule 16.3. Moreover, I certify that Motion for Default Judgment complies with the page limitations set forth in Local Rule 7.1.

Dated:  August 4, 2021                                          Respectfully submitted,

*/s/ Stephen H. Jett*
Stephen H. Jett (0046821)
Matthew D. Smith (0099806)
Buckingham, Doolittle & Burroughs, LLC
1375 East Ninth Street, Suite 1700
Cleveland, Ohio   44114
Phone:  216-736-4241
Email:  sjett@bdblaw.com
           msmith@bdblaw.com

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on this 4th day of August, 2021.  Notice of this filing was sent to Svitlana Myronenko, agent of Radiant Life Technologies, LTD, via email, at <u>mirs77@gmail.com</u>.

*/s/ Stephen H. Jett*_____
Stephen H. Jett (0046821)

CL2:523082_v1